# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK
# BROOKLYN COURTHOUSE

| | |
|---|---|
| Yuzi Hong, individually and on behalf of all others similarly situated, | 1:22-cv-03459 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Church & Dwight Co. Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.      Church & Dwight Co. Inc. ("Defendant") manufactures, markets, labels and sells detergent in containers of 144.5 oz that claims to do "2X More Loads" of laundry compared to its 67.5 oz version under the Arm & Hammer brand ("Product").

 

2.     The "X" next to "2" is the universal symbol for "times" or "multiplied by."

3.     The representation of "2X More Loads" compared to the 67.5 oz version is false and misleading because 107 loads is not "two times" more than 50.

| Oz | Loads | Oz/Load |
|-------|-------|---------|
| 144.5 | 107 | 1.35 |
| 67.5 | 50 | 1.35 |

4.     The phrase, "two times more [than X]" means three multiplied by X, shown in the first row of the below table.[1]

```
What's being said | What it actually means
------------------+-----------------------
    two times more | X + 2 * X = 3X
     twice as much | 2 * X = 2X
  double the amount | 2 * X = 2X
                    |
    two times less | X - 2 * X = -X
      half as much | (1/2) * X = (1/2)X
one half the amount | (1/2) * X = (1/2)X

where X is the original amount we have.
```

5.     These formulas are confirmed by Merrill Perlman, a journalist who has studied the ways algebraic formulas are understood by the public.

6.     According to Perlman, if someone has $100, and it is "doubled," they will have $200.

7.     However, if a person has "two times more" than the original $100, they will have their original $100 plus $200, for a total of $300.

8.     The Product does not state it will provide enough detergent for "twice" or "double" the number of loads compared to the 67.5 oz version, which would have been true.

9.     Consumers see the "2X More" claim and may see "107 Loads" in smaller print in the lower corner of the label.

---

[1] "Much" is used with uncountable nouns, such as water, while "many" is used with countable nouns, such as cats.

10.     However, the Product's front label does not disclose that the 67.5 oz version provides enough detergent for 50 loads.

11.     Consumers believe that the 107 loads represents the number of loads of laundry that the 67.5 oz version could be used for, plus twice the number of loads of laundry that the 67.5 oz version could be used for.

12.     Consumers are misled to not get as much detergent as they were promised.

13.     To provide consumers with enough detergent to do "2X More" loads than what the 67.5 oz version could do, the Product would need to contain 202.5 oz, which is 58 oz more than 144.5 oz.

14.     Defendant makes other representations and omissions with respect to the Product which are false and misleading.

15.     Reasonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

16.     The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

17.     Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

18.     Had Plaintiff known the truth, she would not have bought the Product or would have paid less for it.

19.     As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $8.89 for 144.5 oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be

sold for absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

20.    Jurisdiction is pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

21.    The aggregate amount in controversy exceeds $5 million, including sales, statutory and punitive damages, injunctive relief, and attorney's fees, exclusive of interest and costs.

22.    The Product is sold at thousands of locations in the states covered by the classes Plaintiff seeks to represent.

23.    Plaintiff Yuzi Hong is a citizen of New York.

24.    Defendant Church & Dwight Co. Inc. is a Delaware corporation with a principal place of business in Ewing, Mercer County, New Jersey.

25.    The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

26.    The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here for several years, in thousands of locations, in the states covered by Plaintiff's proposed classes.

27.    The Product is available to consumers from grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

28.    Venue is in the Brooklyn Courthouse in this District because a substantial part of the events or omissions giving rise to these claims occurred in Queens County, including Plaintiff's purchase, consumption, transactions and/or use of the Product and awareness and/or experiences of and with the issues described here.

Parties

29.    Plaintiff Yuzi Hong is a citizen of Flushing, Queens County, New York.

30.    Defendant Church & Dwight Co. Inc. is a Delaware corporation with a principal place of business in Ewing, New Jersey, Mercer County.

31.    Defendant is a leading consumer goods company and sells detergents under the Arm & Hammer brand.

32.    Consumers trust Arm & Hammer because its baking soda is a staple of refrigerators nationwide, known for keeping things fresh and clean, at a reasonable price.

33.    Consumers likewise trust other products bearing the Arm & Hammer name, and believe that if a detergent tells them it will provide enough to do "2X More" loads of laundry than a reference amount, then it will provide enough for this amount, not almost 60 oz less detergent than they should have received.

34.    Defendant spends millions of dollars each year on consumer research to identify attributes of products consumers want and will pay more for.

35.    Defendant's studies and records acknowledge that consumers increasingly seek the best value for their hard-earned dollars, and are enticed by promises of "more" when compared to other products in the same product line.

36.    Plaintiff purchased the Product at locations including Stop & Shop Supermarket, 3106 Farrington St, Queens, NY 11354, between May 1, 2022 and June 12, 2022, among other times.

37.    Plaintiff believed and expected the Product contained enough to do as many loads of laundry as the 67.5 oz version plus two times the number of loads of laundry as the 67.5 oz version, for a total of three times the number of loads of laundry that could be done by the 67.5 oz version

because that is what the representations and omissions said and implied, on the front label and the absence of any reference or statement elsewhere on the Product.

38.    Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, hang tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

39.    Plaintiff bought the Product at or exceeding the above-referenced price.

40.    Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it.

41.    Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

42.    The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

43.    Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

44.    Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar detergent that costs the lowest price per load relative to itself and other products, because she is unsure whether those representations are truthful.

<u>Class Allegations</u>

45.     Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Kansas, New Hampshire, Nebraska, Virginia, South Carolina, Montana, Iowa, Mississippi, and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

46.     Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

47.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

48.     Plaintiff is an adequate representative because her interests do not conflict with other members.

49.     No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

50.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

51.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

52.     Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350

(Consumer Protection Statute)

53.     Plaintiff incorporates by reference all preceding paragraphs.

54.     Plaintiff believed the Product contained enough to do as many loads of laundry as the 67.5 oz version plus two times the number of loads of laundry as the 67.5 oz version, for a total of three times the number of loads of laundry that could be done by the 67.5 oz version.

55.     Defendant's false, misleading and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

56.     Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

57.     Plaintiff relied on the representations and omissions to believe the Product contained enough to do as many loads of laundry as the 67.5 oz version plus two times the number of loads of laundry as the 67.5 oz version, for a total of three times the number of loads of laundry that could be done by the 67.5 oz version.

58.      Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

59.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

60.     The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent

and/or the consumer protection statute invoked by Plaintiff.

61.     Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

62.     As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

63.     Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <em>et seq</em>.

64.     The Product was manufactured, identified, marketed and sold by Defendant and expressly and impliedly warranted to Plaintiff that it contained enough to do as many loads of laundry as the 67.5 oz version plus two times the number of loads of laundry as the 67.5 oz version, for a total of three times the number of loads of laundry that could be done by the 67.5 oz version.

65.     Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

66.     Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

67.     Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it contained enough to do as many loads of laundry as the 67.5 oz version plus two times the number of loads of laundry as the 67.5 oz version, for a total of three times the number of loads of laundry that could be done by the 67.5 oz version.

68.     Defendant's representations affirmed and promised that the Product contained enough to do as many loads of laundry as the 67.5 oz version plus two times the number of loads of laundry as the 67.5 oz version, for a total of three times the number of loads of laundry that could be done by the 67.5 oz version.

69.     Defendant described the Product so Plaintiff believed it contained enough to do as many loads of laundry as the 67.5 oz version plus two times the number of loads of laundry as the 67.5 oz version, for a total of three times the number of loads of laundry that could be done by the 67.5 oz version, which became part of the basis of the bargain that it would conform to its affirmations and promises.

70.     Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

71.     This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company, and the custodian of the Arm & Hammer brand, the original baking soda.

72.     Plaintiff recently became aware of Defendant's breach of the Product's warranties.

73.     Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

74.     Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with the Product.

75.     Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

76.     The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

77.    The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if it contained enough to do as many loads of laundry as the 67.5 oz version plus two times the number of loads of laundry as the 67.5 oz version, for a total of three times the number of loads of laundry that could be done by the 67.5 oz version.

78.    The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it contained enough to do as many loads of laundry as the 67.5 oz version plus two times the number of loads of laundry as the 67.5 oz version, for a total of three times the number of loads of laundry that could be done by the 67.5 oz version, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

79.    Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

80.    Defendant had a duty to truthfully represent the Product, which it breached.

81.    This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company, and the custodian of the Arm & Hammer brand, the original baking soda.

82.    Defendant's representations and omissions regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

83.    These promises were outside of the standard representations that other companies

may make in a standard arms-length, retail context.

84.   The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

85.   Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

86.   Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

87.   Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained enough to do as many loads of laundry as the 67.5 oz version plus two times the number of loads of laundry as the 67.5 oz version, for a total of three times the number of loads of laundry that could be done by the 67.5 oz version.

88.   Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

89.   Defendant knew of the issues described here yet did not address them.

90.   Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

<u>Unjust Enrichment</u>

91.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   June 12, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com

Law Office of James Chung
James Chung
43-22 216th Street
Bayside NY 11361
Tel: (718) 461-8808

jchung_77@msn.com